# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM R. MAERLENDER, JR.,** | ) | **CASE NO. 1:11CV2762** |
| | ) | |
| **Petitioner,** | ) | **JUDGE DAN A. POLSTER** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **KIMBERLY CLIPPER, WARDEN,** | ) | |
| **Grafton Correctional Institution,** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, William R. Maerlender, Jr., ("Maerlender"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Maerlender*, Cuyahoga County Court of Common Pleas Case No. CR520988.  Maerlender, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on December 19, 2011.  On March 23, 2012, Warden Kimberly Clipper ("Respondent") filed her Answer/Return of Writ.  (Doc. No. 8.)  Maerlender did not file a Traverse.  For reasons set forth in detail below, it is recommended that Maerlender's petition be denied.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Maerlender's conviction as follows:

{¶ 5} In April, 2008, AD moved with her boyfriend CL to an apartment complex located in Berea, Ohio. At that time, both of them had been charged in a drug case; AD wanted to "start over" [FN2] at a new place. They shared the apartment with another young man, EJ, with whom they both worked. AD also made acquaintance over time with other residents in the complex, including appellant and his girlfriend, Heather. AD eventually viewed appellant as a friend, but CL and appellant became antagonistic toward each other after an altercation occurred

between them.

FN2. Quotes indicate testimony given at trial.

{¶ 6} In May 2008, AD applied in her criminal case for the "Early Intervention Program" ("EIP"). She understood she could no longer use drugs after she made her application. Subsequently, she learned she was pregnant; this development made her more determined to forgo substances that might harm her baby.

{¶ 7} However, AD missed a pretrial hearing scheduled for July 23, 2008, and became aware that a warrant had been issued for her arrest. She asked her attorney to intercede with the court on her behalf about the situation and waited to hear whether he was successful.

{¶ 8} On the night of July 30, 2008, AD and CL had an argument. The argument remained unresolved as CL left the apartment to seek medical treatment for a back problem. AD decided the two of them needed a "cooling off" period, so at approximately 10:00 p.m. she also left the apartment, proceeding to appellant's unit.

{¶ 9} Appellant and Heather welcomed AD. After hearing AD's explanation for her visit, appellant told her she could sleep on one of their couches if she wanted to. AD sat down with them to watch television. As the evening passed, AD observed appellant and Heather "were drinking," but she did not want to be "tempted by anything." Thus, although Heather ingested a "yellow pill" that appellant offered, AD surreptitiously "went into the bathroom" with the one appellant provided to her and "flushed it down the toilet" instead of taking it. Appellant told AD the pill would help her "feel more comfortable," and AD did not want to hurt his feelings by rejecting it outright. AD eventually fell asleep on the couch.

{¶ 10} Sometime later, AD awoke to find her "bra had been pulled up and [appellant's] fingers were in [her] vagina and he was leaning over the side of the couch." Appellant was "groping" one of her breasts with one hand, while his other was "[d]own [her] pants," inside her underwear. AD was "stunned" at the discovery, and asked appellant "what he was doing." Appellant seemed "shocked" to find her awake; he answered that he was "just rubbing" her.

{¶ 11} AD arose from the couch, rearranged her clothing, and moved toward the front door; her aim was to get herself "out and away from the situation without further being harmed." Appellant moved in front of her to block the door. He reassured her that "everything's okay," and that she still could sleep there. AD told him she had to leave, reaching her hand toward the door. In the face of her insistence, appellant stood aside, but preceded her down the stairway. Although he repeated that she could remain, AD fled home.

{¶ 12} AD reported what occurred to CL before he could enter the building; he described her demeanor as "a wreck." Although AD's experience made CL angry enough to try to confront appellant, CL received no answer when he "pounded" on appellant's door. Moreover, CL and AD agreed that she should not report the incident because of her outstanding arrest warrant.

{¶ 13} On September 9, 2008, however, the incident came to light. Berea police detective Dennis Bort arrived at the apartment building investigating a theft report, and received information that led him to seek an interview with CL. After

2

CL spoke to Bort, CL asked if another crime could be reported.

{¶ 14} Bort spoke with AD as a result of CL's inquiry, thus commencing an investigation of the sexual assault. AD provided an oral and a written statement. She also agreed to meet with appellant and to wear a "wire" in order to record their conversation. In talking about the incident with AD, appellant told her he did not remember doing anything to her, but if he did, he was "sorry."

{¶ 15} Bort subsequently interviewed appellant and attempted to speak to Heather. Appellant denied both committing the offenses and apologizing to AD. Heather appeared "sluggish" and "maybe a little hung over"; she "declined to talk" at that time. Although appellant later indicated to Bort that Heather might be available for a further interview, appellant never followed up on this possiblity.[sic].

{¶ 16} On February 12, 2009, appellant was indicted in this case on four counts. Counts 1 and 2 charged him with rape in violation of both R.C. 2907.02(A)(2) and (A)(1)(c), Count 3 charged him with kidnapping with a sexual motivation specification, and Count 4 charged him with GSI. Appellant retained counsel to represent him.

{¶ 17} The case originally was scheduled for trial on June 8, 2009. The record reflects that the prosecutor filed her witness list on April 20, 2009; one of the names on the list was "Miranda Vermes [sic]." Trial had to be continued for various reasons thereafter, however; eventually, trial was scheduled for March 22, 2010.

{¶ 18} On that date, the trial court noted on the record that defense counsel raised an issue of a possible conflict in his representation of appellant. Defense counsel explained under oath that a woman named "Mrs. Davis" had approached him to represent her daughter in an unrelated case, and that he had conducted one meeting with her and her daughter to discuss the matter.

{¶ 19} Defense counsel further stated that it was not until March 19, 2010, upon noticing the name "Miranda Bermes" on the state's subpoena list, that he became aware that the prosecutor intended to call his new client's daughter as a witness at appellant's trial. Defense counsel assured the court that nothing about appellant's case had been mentioned in his meeting with Davis and Bermes.

{¶ 20} In discussing the matter with defense counsel, the trial court ordered counsel to withdraw from Bermes's representation and abjured him from utilizing any information he had gained from Bermes in his cross-examination of her. Defense counsel pledged to comply with those directives. Appellant had no objection to defense counsel's continued representation. The case proceeded to trial.

{¶ 21} The state presented the testimony of AD, her mother, CL, Bermes, and Bort. After the trial court denied his Crim.R. 29 motion for acquittal, appellant testified in his own behalf. He also presented the testimony of his friend Herbert Ebner. Appellant denied committing the offenses, and asserted that CL put AD up to making the allegations as a way to extort money from appellant. Ebner indicated that on one occasion, he witnessed CL "yelling at" appellant.

{¶ 22} The jury ultimately found appellant guilty on all counts. At sentencing, the prosecutor acknowledged that Counts 1, 2, and 3 were allied offenses pursuant to

3

R.C. 2941.25(A), and left it "up to the court" to choose the one on which to impose sentence. The trial court merged Counts 2 and 3 into Count 1, and imposed concurrent terms of five years on Count 1 and one year on Count 4. The trial court also classified appellant as a "Tier III" sexual offender.

*State v. Maerlender*, 2011 WL 2112688, *1-3, 2011-Ohio-2515 (Ohio App. 8th Dist., May 26, 2011).

## II. Procedural History

### A.     Conviction

In January, 2009, a Cuyahoga County Grand Jury charged Maerlender with two counts of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02, one count of kidnapping in violation of O.R.C. § 2905.01, including a sexual motivation specification, and one count of gross sexual imposition in violation of O.R.C. § 2907.05.  (Doc. No. 8-1, Exh. 1.)  A jury found him guilty as charged.  Maerlender, *pro se*, filed a motion for new trial or acquittal, which was denied.  *Id*. at Exh. 2.  For the purpose of sentencing, the court merged the kidnapping conviction with the two rape convictions.  Maerlender was sentenced to an aggregate prison term of five years.  *Id*. at Exh. 3.

### B.     Direct Appeal

On May 5, 2010, Maerlender, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court"), raising three assignments of error:

>    1.     The Appellant was denied his constitutional right of due process based upon ineffective assistance of counsel.
>
>    2.     The trial court improperly denied the admission of relevant testimony in contravention of Appellant's constitutional right to due process.
>
>    3.     The convictions of the Appellant were against the manifest weight of the evidence and the evidence was insufficient as a matter of law.

*Id*. at Exh. 5.  On May 26, 2011, Maerlender's conviction was affirmed.  *Id*. at Exh. 7.

On July 8, 2011, Maerlender filed a Notice of Appeal with the Ohio Supreme Court asserting the following propositions of law:

>    1.     [T]he Defendant-Appellant was denied his constitutional right of due process based on ineffective assistance of counsel.

4

2.      The trial court improperly denied the admission of critical testimony in contravention of Defendant Appellant's right to due process.

3.      The convictions of Defendant Appellant were against the manifest weight of the evidence as a matter of law.

*Id*. at Exh. 8.  On October 19, 2011, the appeal was dismissed as not involving any substantial constitutional question.  *Id*. at Exh. 12.

## C.      Federal Habeas Petition

On December 19, 2011, Maerlender filed a Petition for Writ of Habeas Corpus, asserting the following grounds for relief:

**GROUND ONE**:  Denial of effective assistance of defense counsel.
        **Supporting Facts**:  Violation of the Sixth Amendment right by counsel failing to prepare for trial and ensure the protection rights of Due Process.

**GROUND TWO**:  Trial court denied admission of testimony.
        **Supporting Facts**:  Trial court abused its discretion by forbidding admissible testimony that denied the right to Due Process.

**GROUND THREE**:  The conviction was against the manifest weight of the evidence.
        **Supporting Facts**:  Evidence was insufficient to prove beyond reasonable doubt.

(Doc. No. 1.)

## III.  Exhaustion and Procedural Default

## A.      Exhaustion Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

5

**B.**        **Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could

---

[1]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

6

have been raised on direct appeal.  *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."  *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually

7

innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*;  See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 132 S.Ct. 2148, 567 U.S. –, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (U.S. Jun. 11, 2012).

A state court's decision is contrary to clearly established federal law "if the state court

8

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. App'x 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id*. at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87.  This is a very high standard, which the Court readily acknowledges. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### V.  Analysis

#### A. Manifest Weight/Sufficiency of the Evidence

In ground three, Maerlender contends that his conviction was against the manifest weight of the evidence and that the evidence was insufficient to prove his guilt beyond a reasonable doubt. (Doc. No. 1 at 5.)  Respondent asserts that Maerlender's manifest weight argument is not cognizable in federal habeas and that his sufficiency claim is procedurally defaulted or meritless. (Doc. No. 8 at 9-10; 16-17; 34-40.)

Manifest weight claims are not cognizable on federal habeas review.[2]  *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin*, 2006 WL 2090093 at *7 (S.D. Ohio 2006).  Therefore, Maerlender's manifest weight argument will not be considered. The Sixth Circuit has directed federal habeas courts that a sufficiency of the evidence issue is "adequately passed upon by the Ohio courts" when the state appellate court determines that the conviction was supported by the manifest weight.  *Nash v. Eberlin*, 258 Fed. App'x 761, 765 (6th Cir. Dec. 14, 2007).  Such a determination "necessarily implies a finding that there was sufficient evidence."  *Id.*

Respondent contends that Maerlender's sufficiency claim is procedurally defaulted as it was not raised in his appeal to the Ohio Supreme Court.  Maerlender, however, raised both sufficiency and manifest weight arguments with the state appellate court.  This Court declines to consider the procedural default issue, and will instead proceed to address the merits of Maerlender's sufficiency claim.  The United States Supreme Court has observed that federal

---

[2]As explained by the United States District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered .'"  *Hess v. Eberlin*, 2006 WL 2090093 at *7 (*quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App.1983)). Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Maerlender's conviction was against the manifest weight of the evidence.  *Id.*

10

courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.; Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution."  *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969–70; *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review).

The state appellate court found sufficient evidence as follows:

{¶ 41} Appellant argues in his third assignment of error that his convictions are not supported by either sufficient evidence or the manifest weight of the evidence. This court disagrees.

{¶ 42} In reviewing a challenge based upon sufficiency, this court must examine the evidence presented at trial to determine whether, if believed, the evidence would convince the average mind of the accused's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. The evidence must be viewed in the light most favorable to the prosecution. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Sufficiency is a question of law; the trial court determines whether the state has met its burden to produce evidence on each element of the crime charged. *Id.*

11

{¶ 43} In considering a challenge to the manifest weight of the evidence, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *State v. Leonard*, 104 Ohio St.3d 54, 2004–Ohio–6235, 818 N.E.2d 229, ¶ 81. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. *State v.. Thompkins*, 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541. Moreover, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to assess. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 44} Appellant was convicted of rape, in violation of both R.C. 2907.02(A)(1)(c) and (2); those provisions state in pertinent part:

{¶ 45} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies:

{¶ 46} "(c) The other's ability to resist or consent is substantially impaired because of a * * * physical condition * * *, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a * * * physical condition * * *.

{¶ 47} " * * *

{¶ 48} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 49} Appellant also was convicted of kidnapping, in violation of R.C. 2905.01, which states in pertinent part:

{¶ 50} "(A) No person, by force, * * * shall * * * restrain the liberty of [an]other person, for any of the following purposes:

{¶ 51} "(4) To engage in sexual activity * * * with the victim against the victim's will."

{¶ 52} Finally, the jury convicted appellant of gross sexual imposition, in violation of R.C. 2907.05, which states in pertinent part:

{¶ 53} "(A) No person shall have sexual contact with another, not the spouse of the offender; * * * when any of the following applies:

{¶ 54} "(1) The offender purposely compels the other person * * * to submit by force or threat of force."

{¶ 55} The state presented the jury with sufficient evidence to prove appellant committed each of the foregoing offenses. AD testified that even though she was a very "heavy" sleeper, she awoke to find appellant fondling one of her breasts with one hand while two fingers of his other hand were inside her vagina. Her clothing had been pushed aside, and appellant was "leaning over" her. AD stated she was "shocked" by appellant's actions and she initially was "paralyzed." She further testified she was afraid he might do more harm to her if she did not act in a relatively calm manner.

{¶ 56} AD also testified that after she got up and rearranged her clothing, appellant saw her move toward the apartment door, so he placed himself in front of it. Appellant tried to prevent her from leaving his apartment until he realized she was insistent.

{¶ 57} AD gave a compelling description of the incident and its surrounding circumstances. Her testimony found corroboration in CL's observations of her demeanor immediately after the incident, and in AD's mother's assessment of AD's reaction to her ordeal. Indeed, the state's witnesses presented a logical, coherent account.

{¶ 58} Appellant's story, on the other hand, strained credulity in light of his admissions. Furthermore, Ebner added little to appellant's defense.

{¶ 59} Consequently, appellant's convictions are supported by both sufficient evidence and the manifest weight of the evidence. *State v. Jackson*, Cuyahoga App. No. 93235, 2010–Ohio–3716. His third assignment of error also is overruled.

*State v. Maerlender,* 2011 WL 2112688, *5-7, 2011-Ohio-2515 (Ohio App. 8th Dist., May 26, 2011).

The state appellate court identified the correct standard for sufficiency of the evidence claims. Under Ohio law, a conviction for rape does not require the presence of physical evidence. *See, e.g., State v. Johnson*, 858 N.E.2d 1144, 112 Ohio St.3d 210, 217 (Ohio 2006) (rejecting a sufficiency of the evidence claim based on a lack of physical evidence of rape). The *Johnson* Court also noted that corroboration of victim testimony in rape cases is not required. *Id*.; *accord State v. Ward*, 2010–Ohio–6462 at ¶ 62, 2010 Ohio App. LEXIS 5363 (Ohio Ct. App., Dec. 28, 2010); *see also State v. Love*, 550 N.E.2d 951, 49 Ohio App.3d 88, 91 (Ohio Ct.App.1988) ("no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction.")

Upon reviewing the record, the state appellate court's assessment of the evidence was accurate. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for a reasonable trier of fact to find Maerlender guilty. Ground three is without merit.

## B. Admission of Testimony - Confrontation Clause

In ground two, Maerlender contends that his due process rights were violated when the trial court disallowed admissible testimony. Maerlender does not identify the testimony in his Petition, but on direct appeal he argued that the trial court should have permitted (1) Bermes to

13

give her opinion on the truthfulness of AD's allegations; (2) CL to testify about AD's previous abortion; and (3) Marlender's witness, Herbert Ebner, to testify about specific threats CL made. (Doc. No. 8-1, Exh. 5, pp. 16-20.)   Respondent asserts that this ground is either not cognizable, procedurally defaulted or without merit.

The U.S. Supreme Court has consistently stated that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.  *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

To be entitled to relief a petitioner must establish that there has been an infringement of a right guaranteed under the United States Constitution.  *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).  As a general rule, an error of state law in the admissibility of evidence does not constitute such a denial and, therefore, is not cognizable in habeas corpus.  *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001).  Under the AEDPA, the states have wide latitude in ruling on evidentiary matters.  *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001).  In considering a habeas corpus petition a federal court may not grant relief merely because it disagrees with the evidentiary rulings of the state courts, but may only do so if the state court's rulings were contrary to those of the United States Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846 (6th Cir. 2000).  Such claims are only cognizable where the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights." *Clemmons*, 34 F.3d at 356.  Maerlender argued on direct appeal that he was prejudiced by these evidentiary rulings and that they caused a manifest miscarriage of justice.  (Doc. No. 8-1, Exh. 5, p. 20.)

Respondent next contends that this ground is procedurally defaulted as Maerlender presented no supporting facts to the Ohio Supreme Court.  (Doc. No. 8 at 15-16.)  As the record

14

reflects that Maerlender did not fully present this ground to the Ohio Supreme Court, it is defaulted.  Alternatively, upon a review, ground two is meritless.

Under the AEDPA, the court may only grant relief if a petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court on a set of materially indistinguishable facts. *Bey*, 500 F.3d at 521–22; *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

The state appellate court addressed Maerlender's claims concerning exclusion of evidence as follows:

> {¶ 34} Appellant next asserts the trial court made errors in making rulings on evidentiary matters. Appellant argues the trial court should have permitted: 1) Bermes to give her opinion on the truthfulness of AD's allegations against appellant; 2) CL to testify about AD's previous abortion; and 3) Ebner to testify about specific threats CL made against him. Appellant further contends the trial court should have foreclosed both testimony about AD's statements made directly after the incident, and the prosecutor's question of Bort as to whether appellant ever brought Heather to the police station.

> {¶ 35} A trial court has broad discretion in the admission or exclusion of evidence. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Thus, a trial court's ruling on the admissibility of evidence will be upheld unless the record demonstrates an abuse of discretion that caused material prejudice. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 483 N.E.2d 1157. A review of the record in this case fails to demonstrate the trial court abused its discretion.

> {¶ 36} The trial court refused to permit Bermes to give her opinion about the truthfulness of AD's allegations because Bermes gave her opinion during an interview with counsel that, at the time, was protected by attorney-client privilege. The trial court simply held defense counsel to his promise to refrain from questioning Bermes on such matters.

> {¶ 37} As to CL's attempt to comment on AD's earlier pregnancy, such testimony would have been gratuitous and irrelevant; therefore, the trial court properly excluded it. Evid.R. 402. Similarly, the trial court appropriately refused to permit Ebner to provide hearsay evidence prohibited by Evid.R. 801(C). Since appellant's testimony established a possible motive for CL and AD to bring false allegations against him, moreover, he cannot demonstrate any material prejudice resulted from the trial court's decisions.

*State v. Maerlender*, 2011 WL 2112688, *4-5, 2011-Ohio-2515 (Ohio App. 8th Dist., May 26, 2011).

Maerlender argued in the state appellate court that under Ohio Evid. R. 701,[3] Bermes should have been allowed to give her opinion as to whether AD was telling the truth.  He also argued that the court should have allowed CL's testimony regarding AD's previous abortion, as well as Ebner's testimony regarding threatening remarks by CL made to Maerlender.

Ohio law provides a trial court with considerable discretion whether to admit the opinion testimony of a lay witness.  *State v. Kehoe*, 133 Ohio App.3d 591, 603, 729 N.E. 431 (1999). Maerlender has not established that the state appellate decision conflicted with Supreme Court precedent or that the state court decided the evidentiary issue differently than the Supreme Court on materially indistinguishable facts.  *See Bey*, 500 F.3d at 521-22; *Sanders*, 221 F.3d at 860.

Whether Bermes believed AD was telling the truth, or whether AD had a previous abortion was not material evidence.  Alternatively, even if the trial court erred in admitting/excluding evidence, it was harmless error.  Regarding Ebner's testimony, the jury had already heard Maerlender testify that CL was trying to extort money and that CL had threatened his life.  (Doc. No. 8-3 at 423, 445.)  The jury had also heard testimony that there was animosity between CL and Maerlender by Maerlender acknowledging that he had gone to CL's apartment and attacked him with a table leg.  *Id.* 445-446.  Maerlender further acknowledged being arrested and put on probation as a result of the altercation.  *Id*. at 411-412.

### C.  Ineffective Assistance of Trial Counsel

In ground one, Maerlender asserts that he was denied effective assistance as trial counsel failed to prepare for trial.  Although not raised in Maerlender's petition, Respondent addresses arguments Maerlender made in the state appellate court regarding two other ineffective claims. First, Maerlender argued that counsel failed to object to the prosecutor's questions of Det. Dennis Bort or to properly follow-up with questions during cross-examination. Secondly, counsel failed to ask questions regarding an alleged extortion scheme.  (Doc. No. 8 at 25-29.)

---

[3]Ohio Evid. R. 701 provides as follows: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Respondent argued that such claims are meritless.[4] (Doc. No. 8 at 20.)

As a *pro se* petitioner, "'[Maerlender's] pleadings are held to a less stringent standard than those prepared by an attorney' and are liberally construed in his favor." *Humphreys v. United States*, 238 Fed. Appx. 134, 138 (6th Cir. 2007) (*quoting Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006)). Other than that, no special treatment is afforded litigants who decide to proceed *pro se. McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980 (1993) (strict adherence to procedural requirements); *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991); *Brock v. Hendershot*, 840 F.2d 339, 343 (6th Cir. 1988). As such, the Court will address the three ineffective assistance claims that Maerlender raised with the state appellate court.

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id.* To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that

---

[4]Respondent also asserted that, because Maerlender did not raise a conflict of interest claim in the state courts nor in this Petition, such a claim is not properly before the Court and would be procedurally defaulted. *Id*. at 20, fn. 5. The Court agrees.

the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also*

*United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The state appellate court applied state law interpreting the *Strickland* standard as follows:

{¶ 27} In his first assignment of error, he claims his retained attorney provided such ineffective assistance as to deny his constitutional rights. Appellant contends that because counsel failed to realize Bermes was a state's witness, he did not adequately prepare for trial, because counsel failed to object to the prosecutor's question to Bort about whether appellant "made any efforts to bring [Heather] down to the station to talk to" Bort, counsel did not protect appellant's right to remain silent, and because counsel was unable to introduce evidence of CL's specific threats to appellant, counsel did not provide appellant a full defense.

{¶ 28} A reviewing court will not deem counsel's performance ineffective unless a defendant can show both that counsel's performance fell below an objective standard of reasonable representation and that prejudice arose from the deficient performance. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus.

{¶ 29} In order to show prejudice, a defendant must prove that, but for counsel's errors, a reasonable probability exists that the trial result would have been different. *Id*. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. *State v. Moon*, Cuyahoga App. No. 93673, 2010–Ohio–4483, *citing State v. Sallie*, 81 Ohio St.3d 673, 1998–Ohio–343, 693 N.E.2d 267. This court will not second-guess matters of trial strategy. *State v. Clayton* (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189, certiorari denied *Clayton v. Ohio* (1980), 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102.

*State v. Maerlender*, 2011 WL 2112688, *3-4 (Ohio App. 8th Dist., May 26, 2011).

### (**1**) **Failure to prepare for trial**

Marlender contends that counsel did not realize until shortly before trial that he

simultaenously was representing state's witness, Miranda Bermes.  Maerlender elaborated on

this issue in his state appellate brief as follows:

Trial counsel for Appellant fell below an objective standard of reasonable representation.  In the case at bar, counsel did not realize until a few days before trial that he had been retained to represent an individual that appeared on the State of Ohio's witness list.  Upon realizing this, the Trial Court held a hearing and ordered that counsel withdraw from the case of the witness and proceed to trial in the instant matter.  Counsel later attempted to have information that had been provided to him voluntarily, outside of the attorney/client relationship introduced through witness testimony and the Trial Court denied the admission of the testimony.

(Doc. No. 8, Exh. 5, pp. 14-15.)

Prior to the start of trial on March 22, 2010, counsel advised the court that he had been

recently retained to represent Bermes by her mother.  (Doc. No. 8-2, 7.)  Counsel explained that

18

the State had spelled Bermes' name as "Vermes" on the witness list. *Id*. Counsel did not meet Bermes until March 8th. *Id*. Even after meeting Bermes, he did not realize that she was a prosecution witness in the Maerlender case until March 19, 2010,[5] when he asked the clerk's office for copies of subpoenas. *Id*. at 8-9.

The court proceeded to question counsel on his relationship as Maerlender's retained counsel. Counsel stated that he had represented Maerlender for almost a year, attended numerous pre-trials, filed motions and conducted discovery in the case. *Id*. at 11-12, 32. Counsel also represented that he was prepared for trial. *Id*. at 12. Furthermore, Maerlender expressed confidence in counsel. *Id*. at 32. The court found that counsel was not conflicted as follows:

> With the provision that you make immediate arrangements to disengage yourself from professionally representing Miranda Bermes and making proper arrangements for the return of retainer on that case, this Court doesn't see any conflict with you continuing your representation of William Maerlender, nor does this Court see any violation of the rules of ethical, professional responsibility, since you had not realized that she was a witness in this case, even though you knew her name, you didn't put them together until you saw her name on the subpoena list and then at the first available time, you did bring it to the attention of the prosecutor and the Court.
>
> And, this is also buttressed by the fact that you did not learn anything about this case from her. You didn't seek to question her about her involvement in this case, since you didn't realize she had involvement in the case. So, the Court will find that there is no contempt of this court. There is no violation of the professional responsibility as long as you follow through and disengage yourself from Miranda Bermes while this case is pending.
>
> And, I do say that when you disengage yourself, I think it is with an abundance of caution you make clear to them, even after Mr. Maerlender's case is concluded, you cannot represent her in the future on the particular charge that she's now charged with.

*Id*. at 28-29.

The state appellate court addressed counsel's alleged ineffectiveness as follows:

> {¶ 30} The record of this case fails to support a conclusion that appellant's defense counsel was unprepared for trial. Defense counsel took part in many pretrial hearings during the thirteen months that the case was pending. The prosecutor misspelled Bermes's name in her original response to the defense request for discovery, and counsel found the error when sending out subpoenas for potential defense witnesses. When the trial court asked appellant on the day of trial if he had any reservations about counsel's representation, appellant expressed confidence in his attorney.

_____

[5]March 19, 2010, was a Friday, the last business day prior to trial.

19

*State v. Maerlender*, 2011 WL 2112688, *4 (Ohio App. 8th Dist., May 26, 2011).

The state appellate court noted that on the day of trial, Maerlender expressed confidence in his attorney and that the trial record failed to bear out his contention that counsel was not prepared.  The state appellate court's decision was not an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.  Subclaim one is without merit.

### (**2**) **Failure to Object to Detective Bort's Direct Examination**

Maerlender also claims that counsel was ineffective when he failed to object to the prosecutor's questioning of Det. Bort about Maerlender's girlfriend, Heather, failing to give a statement to the police.  In Maerlender's appellate brief, without citing any legal authority, he framed the claim as follows:

> Trial counsel failed to properly object when the Appellant's Fifth Amendment rights were being violated when Detective Bort was able to testify that Appellant never brought Ms. [Heather] Brandt to the station to talk to him.  (Tr. 389.)  Appellant has the absolute right to remain silent and this includes witnesses in his defense.  Trial counsel prejudiced his client by failing to object to this line of questioning or even following up on it.  This placed in the mind of the jury that the Appellant had an obligation to get Ms. Brandt to talk to the police despite the fact that he is disabled and secondly, that this individual should be testifying in court and if she wasn't why not.

(Doc. No. 8, Exh. 5, p. 15.)

The state appellate court found that counsel was not ineffective as follows:

> {¶ 31} Similarly, counsel's failure to object to the prosecutor's final questions of Bort during direct examination does not support a conclusion that counsel's omission was unintended.  Counsel reasonably could have concluded the jury would understand appellant had no control over Heather's actions. *State v. Tibbetts*, 92 Ohio St.3d 146, 165–167, 2001–Ohio–132, 749 N.E.2d 226.

*State v. Maerlender*, 2011 WL 2112688, *4 (Ohio App. 8th Dist., May 26, 2011).

Generally, counsel's decision not to make objections or to cross-examine is a matter within the realm of trial tactic.  *Randolph v. Wolfenbarger,* 2006 WL 1662885, *16 (E.D. Mich.); *State v. McCroskey*, 1997 Ohio App. LEXIS 1276 (Ohio App. 9th Dist. Apr. 2, 1997).  As the Sixth Circuit has held, tactical decisions as well as decisions involving the presentation of witnesses are entrusted to the exclusive judgment of the trial attorney.  *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974).  Ohio law also provides that, as such, these tactical decisions should not

be second-guessed by a reviewing court.  *State v. Craig*, 2007 WL 1153468 (Ohio App. 8th Dist. Apr. 19, 2007) *citing State v. Tibbets*, 749 N.E.2d 226, 92 Ohio St.3d 146, 166-167 (Ohio 2001). The failure to object, therefore, without more, is insufficient to sustain a claim of ineffective assistance of counsel.  *State v. Conway*, 842 N.E.2d 996, 108 Ohio St.3d 214 (Ohio 2006). Moreover, the fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Maerlender has failed to show that there is a reasonable probability that the jury would not have convicted him if counsel had objected or asked follow-up questions.  Subclaim (2) is also meritless.

### (3) Cross-Examination of CL regarding Extortion

Maerlender also asserts ineffective assistance based upon counsel's failure to ask questions regarding an alleged extortion scheme.

The state appellate court found counsel was not ineffective as follows:

{¶ 32} Finally, a review of defense counsel's performance demonstrates he effectively established the animosity CL held toward appellant; CL showed his attitude in his answers during cross-examination. Moreover, counsel's questions of appellant during direct examination clearly brought forward the theory of the defense. Counsel's strategy may have proved unsuccessful, but this fact, in itself, does not establish ineffective assistance. *Id*.

*State v. Maerlender*, 2011 WL 2112688, *4 (Ohio App. 8th Dist., May 26, 2011).

Upon a review of the record, defense counsel asked several questions of CL, accusing him of attempting to extort money from Maerlender.  (Tr. 354.)  Counsel asked if CL came up with the idea to extort money from Maerlender.  *Id*.  Counsel also asked: "Isn't it true that you went up to Mr. Maerlender and Mr. Ebner was also there and you said, if you give me money, I'll make this all go away."  *Id*.  The state appellate court reasonably applied *Strickland* and held that Maerlender had not overcome the presumption that the challenged action might be considered sound trial strategy.  *See Strickland*, 466 U.S. at 689.  Maerlender also has not established prejudice.  To show prejudice in light of the evidence presented at trial, a petitioner must show

that but for the alleged errors of counsel, a reasonable probability existed that he would have been able to sufficiently present a defense so that a jury would not convict him.  The Court finds no such reasonable probability.  Counsel presented Maerlender's defense of an alleged extortion scheme during Maerlender's direct examination, yet the jury convicted him after considering all of the evidence presented at trial.  This subclaim is without merit.

### V.  Conclusion

For the foregoing reasons, it is recommended that Maerlender's Petition be denied.

s/ Greg White
United States Magistrate Judge

Date:   September 26, 2012

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).